**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

ROBERT PECK,                              )
                                          )
            **Plaintiff,**                )
                                          )        **C.A. No. K20C-12-031 NEP**
      v.                                  )
                                          )
ORTHOPAEDIC ASSOCIATES                    )
OF SOUTHERNE DELAWARE, P.A.,              )
and SCOTT SCHULZE, M.D.,                  )
                                          )
            **Defendants.**               )


**OPINION AND ORDER**


Submitted:  June 7, 2021
Decided:  July 28, 2021

*Upon Defendants' Renewed Motion to Dismiss*
**DENIED in part and DEFERRED in part**

*Upon Review of the Amended Affidavit of Merit*
**ACCEPTED in part and DEFERRED in part**


Ronald G. Poliquin, Esquire, The Poliquin Firm, LLC, Dover, Delaware, *Attorney for Plaintiff.*

Colleen D. Shields, Esquire, and Alexandra D. Rogin, Esquire, Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware, *Attorneys for Defendants.*


Primos, J

This matter involves a healthcare negligence suit filed by Plaintiff Robert Peck ("Plaintiff") against Defendants Scott Schulze, M.D. ("Dr. Schulze"), and Orthopaedic Associates of Southern Delaware, P.A. ("Orthopaedic Associates," and together with Dr. Schulze, "Defendants"). Before the Court is Defendants' Renewed Motion to Dismiss along with Defendants' motion to determine whether the affidavit of merit filed by Plaintiff complies with 18 *Del. C.* § 6853(a)(1) and (c). For the reasons that follow, the Renewed Motion to Dismiss is **DENIED in part and DEFERRED in part**, and the Amended Affidavit of Merit is **ACCEPTED in part and DEFERRED in part**.

## I.    FACTUAL BACKGROUND[1]

In July 2018, Plaintiff suffered a work-related injury that caused mild but consistent pain to his left wrist. The next month, he sought treatment from Dr. Schulze of Orthopaedic Associates, who performed a carpal tunnel release on Plaintiff on October 3, 2018. During the procedure, Plaintiff heard a "pop." At a follow-up visit with Dr. Schulze on October 19, 2018, Plaintiff complained of constant numbness in the tips of certain fingers and jolts of pain up his arm. Dr. Schulze ignored the complained-of symptoms and blamed Plaintiff for overuse of his hand. Plaintiff returned for another follow-up visit on December 28, 2018, when Dr. Schulze again ignored Plaintiff's complaints. Plaintiff then sought treatment from another physician, Dr. Pan, who described his symptoms as suspicious of cubital tunnel syndrome at the elbow.

Plaintiff alleges that Dr. Schulze negligently misdiagnosed his symptoms, created a mistaken large incision in his wrist during the carpel tunnel release surgery, and provided negligent follow-up care. Plaintiff further contends that the negligence

---

[1] The facts contained herein are as alleged in Plaintiff's First Amended Complaint, filed on June 7, 2021.

of Dr. Schulze resulted in the development of a deformed hand that is constantly in pain and will require future surgery and medical treatment.

## II.   PROCEDURAL HISTORY

On December 23, 2020, Plaintiff filed a complaint, along with a Motion to Extend Time to File Affidavit of Merit pursuant to 18 *Del. C.* § 6853(a)(2).  That provision allows a plaintiff, upon motion and for good cause, an additional 60 days to file the required affidavit of merit.[2]  The Court granted the extension, and Plaintiff submitted an affidavit of merit within the extension period.

On February 11, 2021, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure and 18 *Del. C.* § 6856, contending that Plaintiff had failed to state a claim upon which relief could be granted because the statute of limitations had run on Plaintiff's claims.  On February 22, 2021, Defendants submitted a motion, pursuant to 18 *Del. C.* § 6853(d), asking the Court to review the affidavit of merit.[3]  Plaintiff filed a response to Defendants' Motion to Dismiss on March 22, 2021.

On March 30, 2021, the Court held oral argument on the Motion to Dismiss. At the argument, Plaintiff's counsel asked the Court for an opportunity to amend his complaint.  The Court indicated that Plaintiff would be allowed to file a motion to amend, and further indicated that Defendants would be permitted to either oppose the motion to amend, file a renewed motion to dismiss in response to the amended complaint, or answer the amended complaint.  Finally, the Court informed the parties that it would defer decision on Defendants' Motion for Review of Affidavit of Merit.

On April 13, 2021, Plaintiff filed his Motion to Amend.  Defendants filed no opposition to that motion, but did file a Renewed Motion to Dismiss on April 27,

---

[2] Pursuant to 18 *Del. C.* § 6853(a), a complaint asserting medical negligence generally must be accompanied by an affidavit of merit.

[3] 18 *Del. C.* § 6853(d) allows a defendant, by motion, to ask the Court to perform an *in camera* review of the affidavit of merit to ensure that it complies with 18 *Del. C.* § 6853(a)(1) and (c).

3

2021. Also, on April 27, Plaintiff filed an Amended Affidavit of Merit.[4] On May 11, 2021, Plaintiff filed a response to Defendants' Renewed Motion to Dismiss.

On May 27, 2021, the Court heard oral argument on Plaintiff's Motion to Amend Complaint and on Defendants' Renewed Motion to Dismiss and Motion for Review of Affidavit of Merit. At the argument, the Court granted the motion to amend as unopposed[5] and ultimately reserved decision on Defendants' Renewed Motion to Dismiss and Motion for Review of Affidavit of Merit. The Court's decision on the latter two motions is set forth below.

### III.    MOTION TO DISMISS

#### A. Standard of Review

On a motion to dismiss, the moving party bears the burden of demonstrating that "under no set of facts which could be proven in support of [the complaint] would the [plaintiff] be entitled to relief."[6] Upon this Court's review of a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[7]

#### B. Discussion

Defendants move to dismiss Plaintiff's Amended Complaint, arguing that the statute of limitations has run on his medical negligence claims because the

---

[4] Although Plaintiff did not seek leave of the Court to file an amended affidavit of merit, in the interests of judicial economy the Court will consider whether Plaintiff's filing of an amended affidavit of merit is permitted in this case. (The Court notes that Defendants did not file a motion to strike the amended affidavit.) If the Court finds that the filing of an amended affidavit of merit is permitted, it will determine whether the amended affidavit complies with 18 *Del. C.* § 6853.

[5] Plaintiff subsequently filed his First Amended Complaint (the "Amended Complaint") on June 7, 2021.

[6] *Daisy Constr. Co. v. W.B. Venables & Sons, Inc.*, 2000 WL 145818, at *1 (Del. Super. Jan. 14, 2000).

[7] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (internal citations and quotations omitted).

4

continuous negligent medical treatment doctrine does not apply. Alternatively, Defendants assert that even if the continuous negligent medical treatment doctrine does apply, the claims are time-barred: they argue that the limitations period started running when Plaintiff had knowledge of the negligent course of treatment, which Defendants claim occurred when Plaintiff heard a "pop" during his surgery or, at the latest, at his first post-operative office visit on October 19, 2018, when he reported numbness in his fingers and pain in his arm to Dr. Schulze.

Plaintiff argues that his Amended Complaint properly alleges a continuum of negligent medical treatment that extended through his December 28, 2018, office visit with Dr. Schulze. Plaintiff also disputes the assertion by Defendants that he had knowledge of negligence prior to the date subsequent to December 28, 2018, when he consulted with Dr. Pan, whose diagnosis was that Plaintiff had cubital tunnel syndrome at the elbow, a different diagnosis than that given by Dr. Schulze.

### 1. Plaintiff's claim is not time-barred because the Amended Complaint sets forth facts alleging continuous negligent medical treatment.

The applicable statute of limitations is set forth in 18 *Del. C.* § 6856, which provides that "[n]o action for the recovery of damages upon a claim against a health-care provider for personal injury . . . arising out of medical negligence shall be brought after the expiration of 2 years from the date upon which such injury occurred."[8] The Delaware Supreme Court has held that, for statute of limitations purposes, "when the cause of action is for continuous negligent medical treatment, the 'date upon which such injury occurred' is the last act in the negligent medical continuum."[9]

---

[8] 18 *Del. C.* § 6856. The statute further provides for a three-year statute of limitations, not applicable here, where the injury "was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person" during the entire two-year period following the occurrence of the injury. *Id.* § 6856(1).
[9] *Ewing v. Beck*, 520 A.2d 653, 663 (Del. 1987).

The plaintiff bears the burden of "*alleging with particularity* a course of continuing negligent medical treatment during a finite period."[10] The facts pled in support of such a claim "must be examined to see if the negligent treatment, as alleged, can be segmented or is, in fact, so inexorably intertwined that there is but one continuing wrong."[11] Furthermore, "[i]f any act of medical negligence within [the] continuum falls within the period during which suit may be brought, the plaintiff is not obligated to split the cause of action but may bring suit for the consequences of the entire course of conduct."[12] When a patient consults independently with another provider about the same condition that is subsequently the subject matter of a claim for continuous negligent medical treatment, there is a presumption that the patient had knowledge of *the* medical negligence as of the date of that consultation.[13]

Defendants cite to *Williamson v. Gopez*[14] for the proposition that the continuous negligent medical treatment doctrine does not apply here. In that case, this Court explained that

> if the alleged wrong involved the manner in which the surgery was performed, such as . . . the negligent cutting of a nerve or tendon, and does *not* interrelate with recuperative treatment, the date of the surgery would be the date the wrongful act or omission occurred. However, *where the surgery and post-operative treatment are interrelated as the causation of the injury*, I find no proper basis for segmenting the chronology in applying the statute of limitations.[15]

Here, the alleged negligence during Plaintiff's initial surgery is inextricably interrelated or, in the words of the *Ewing* Court, "inexorably intertwined,"[16] with his

---

[10] *Id.* at 662 (emphasis in original).
[11] *Id.*
[12] *Id.*
[13] *Id.* at 664.
[14] 1986 WL 1270 (Del. Super. Jan. 10, 1986).
[15] *Id.* at *1 (emphasis supplied).
[16] 520 A.2d at 662.

post-operative treatment, *i.e.*, the October 19, 2018, and December 28, 2018, follow-up visits with Dr. Schulze.

Specifically, the Amended Complaint alleges that "[a]s a result of Schulze's misdiagnosis, mistaken large incision, *and* negligent follow up [sic] care, Plaintiff is in a worse condition than we [sic] he first was treated by Schulze" and that "[a]s a result of Schulze's misdiagnosis, mistaken large incision, *and* negligent follow up [sic] care, [Plaintiff] is left with a deformed hand constantly in pain which will require future surgery and medical treatment."[17]   Regarding the post-operative treatment in particular, the Amended Complaint alleges that "[a]fter Plaintiff continued to have problems after surgery, Schulze refused to order the proper testing to apply the correct medical treatment causing Plaintiff's hand to be deformed and causing permanent injury."[18]   Finally, the Amended Complaint alleges that the October 3, 2018, surgery "was the first act in the negligent continuum" and that "Dr. Schulze's negligent conduct throughout [sic] December 28, 2018, constituted continuous and uninterrupted negligent medical care."[19]   Thus, pursuant to the allegations of the Amended Complaint, the entire course of treatment beginning with surgery and continuing through post-operative care resulted in Plaintiff's injuries, and the impact of each of these aspects of treatment cannot be distinguished because they were "interrelated as the causation of the injury."[20]

What is not as clear, however, is what is meant by the Amended Complaint's reference to "misdiagnosis,"[21] and more importantly, when that misdiagnosis is alleged to have occurred, given the Amended Complaint's statement, noted *supra*,

---

[17] Am. Compl. ¶ 20, 21.
[18] Am. Compl. ¶ 22.
[19] Am. Compl. ¶ 26.
[20] *Williamson*, 1986 WL 1270, at *1.
[21] The Amended Complaint states that Defendants "[f]ailed to properly diagnose for [Plaintiff's] condition," and separately states that Defendants "[f]ailed to properly diagnose and treat [Plaintiff] after his continuous complaints after surgery."  Am. Compl. ¶¶ 28.a., 28.e.

that the alleged negligent continuum began on October 3, 2018, the date of the surgery. Thus, any claims regarding *pre-surgery* diagnosis, as Defendants argue, would appear to be barred by the statute of limitations, since they arose prior to the alleged negligent continuum. Given the uncertainty and confusion surrounding this issue, and given the Delaware Supreme Court's directive that "public policy favors permitting a litigant a right to a day in court,"[22] the Court will defer dismissal of Plaintiff's claims regarding pre-surgery diagnosis and will allow an additional amendment of the complaint as outlined at the close of this Opinion.

> **2.      This is not the proper stage of litigation for the Court to decide whether Plaintiff had constructive knowledge of continuous negligent medical treatment prior to receiving treatment from a doctor other than Dr. Schulze.**

If a plaintiff alleges "continuing negligent treatment during a finite period, . . . the statute of limitations runs from the date of the last act in the negligent continuum."[23] In *Meekins v. Barnes*, the Delaware Supreme Court explained that to determine the last act in the negligent continuum, the Court conducts a two-part analysis: "first, what is the date upon which the plaintiff had actual or constructive knowledge of the negligent course of treatment; and second, what is the date of the 'last act' in the negligent continuum immediately prior to the date that the patient received knowledge, actual or constructive, of the negligent course of treatment."[24] Delaware courts use a reasonably prudent person standard to determine whether a person had knowledge of the negligent course of treatment.[25]

Defendants argue from *Meekins*, which notably was decided at the summary judgment stage, that even if Plaintiff's case is one of continuous negligent medical

---

[22] *Beckett v. Beebe Med. Ctr., Inc.*, 897 A.2d 753, 757-58 (Del. 2006) (citing *Dolan v. Williams*, 707 A.2d 34, 35-36 (Del. 1998)).

[23] *Ewing*, 520 A.2d at 662.

[24] *Meekins v. Barnes*, 745 A.2d 893, 899 (Del. 2000).

[25] *Id.*

treatment, the Court should dismiss his claim as time-barred because he had constructive knowledge of the negligent course of treatment as early as October 3, 2018, when he heard a "pop" during surgery, or at the latest on October 19, 2018, when Dr. Schulze failed to diagnose the cause of his ongoing symptoms. The Court cannot make such a finding at this stage of the litigation. Before the Court is a motion to dismiss, and therefore, the court must accept all well-pleaded allegations in the complaint as true.[26] Based on the allegations in the Amended Complaint, Plaintiff did not receive an accurate diagnosis of his condition until he consulted with Dr. Pan following his last visit with Dr. Schulze on December 28, 2018. The Court cannot simply make a finding in the absence of evidence that Plaintiff, as a reasonable person, should have known that he had been subjected to a course of continuous negligent medical treatment prior to the consultation with Dr. Pan, particularly where the Amended Complaint also alleges that Dr. Schulze was affirmatively telling Plaintiff during the post-operative visits that his symptoms were caused by "overuse."[27] Therefore, for purposes of Defendants' motion to dismiss, the Court must assume that the statute of limitations began to run on December 28, 2018, the last date in the alleged continuum of negligent medical treatment before Plaintiff presumably received either actual or constructive knowledge of Defendants' negligence from Dr. Pan.

## IV.    MOTION FOR REVIEW OF AFFIDAVIT OF MERIT

Having concluded that the Amended Complaint adequately alleges a continuous course of negligent medical treatment, the court must now determine whether the filing of Plaintiff's Amended Affidavit of Merit is permitted, and if so, whether the affidavit meets the requirements of 18 *Del. C.* § 6853(a)(1) and (c).

---

[26] *Savor*, 812 A.2d at 896.
[27] Am. Compl. ¶¶ 13, 16.

9

## A. The statutory requirements for affidavits of merit are "purposefully minimal."

In Delaware, a healthcare negligence lawsuit must be filed with an affidavit of merit as to each defendant, signed by an expert, and accompanied by the expert's current *curriculum vitae*.[28]  The expert must be licensed to practice medicine as of the affidavit's date, engaged in such practice in the same or similar field as the defendant in the three years immediately preceding the alleged negligence, and Board certified in the same or similar field as the defendant if the defendant is Board certified.[29]  The affidavit must also state that reasonable grounds exist to believe that the applicable standard of care was breached by the defendant and that the breach was a proximate cause of injury alleged in the complaint.[30]  Additionally, the affidavit must be filed under seal and, upon request, may be reviewed *in camera* to ensure compliance with statutory requirements.[31]  The affidavit's requirements are "purposefully minimal."[32]  Affidavits that merely track the statutory language are deemed sufficient.[33]

## B. The standard for allowing amendment to an affidavit of merit is a generous one.

When a plaintiff files an affidavit of merit that "substantially complies" with 18 *Del. C.* § 6853(a)(1) and (c) but has "deficiencies [that] appear to be drafting errors," this Court has allowed plaintiffs to file amended affidavits to correct the

---

[28] 18 *Del. C.* § 6853(a)(1).
[29] *Id.* § 6853(c).  Of course, these requirements apply only if the expert is a physician, and the requirements regarding "same or similar field" apply only if the defendant is a physician.  *McNulty v. Correct Care Solutions, LLC*, 2017 WL 1323711, at *2 (Del. Super. Apr. 7, 2017) (requirement of "same or similar" Board certification does not apply where defendant is not a physician); *accord Zappaterrini v. St. Francis Hosp., Inc.*, 2009 WL 1101618, at *1 (Del. Super. Apr. 22, 2019) ("[B]ecause the defendant is not a physician, the statutory requirement of similar Board certification is not applicable.").  Here, Plaintiff alleges negligence against Orthopaedic Associates based on agency principles. Thus, the statutory requirements of "same or similar field," while applicable with respect to Dr. Schulze, are not applicable with respect to Orthopaedic Associates because it is not a physician.
[30] 18 *Del. C.* § 6853(c).
[31] *Id.* § 6853(d).
[32] *Mammarella v. Evantash*, 93 A.3d 629, 637 (Del. 2014) (quoting *Dishmon v. Fucci*, 32 A.3d 338, 342 (Del. 2011)).
[33] *Dishmon*, 32 A.3d at 342-43.

errors.[34] These instances have included those where the affidavit completely failed to address the alleged negligence of one of the defendants.[35] "The Court's discretion in such instances is warranted because, '[i]n Delaware, public policy favors permitting a litigant a right to a day in court.'"[36]

## C. Plaintiff should be permitted to submit an amended affidavit of merit.

Here, the original affidavit complied with the requirements of the statute regarding the qualifications of the attesting expert. With regard to the requirements regarding the expert's certification of breach and proximate cause, the original affidavit stated that the October 3, 2018, surgical procedure was the proximate cause of Plaintiff's injuries. However, while it also mentioned the October 19, 2018, and December 28, 2018, post-operative visits, the original affidavit failed to address whether and to what extent those events may have contributed causally to Plaintiff's injuries, and the original affidavit failed to mention at all any issues relating to pre-surgery diagnosis.

As this Court recognized in *Williamson*, in the medical malpractice context injury "may result from a succession of treatments or medications which cumulatively produce an injurious result . . . or injury may result from a single event

---

[34] *Buck v. Nanticoke Mem'l Hosp., Inc.*, 2015 WL 2400537, at *1 (Del. Super. May 19, 2015); *see also, e.g., Palacio for Mitchell v. Premier Healthcare, Inc.*, 2015 WL 13697654, at *1 (Del. Super. Sept. 15, 2015) (accepting an amended affidavit after the court rejected the original affidavit of merit for its failure to state whether the defendant's breach of the standard of care had proximately caused the plaintiff's injuries); *Ellet v. Ramzy*, 2004 WL 2240153, at *1 (Del. Super. Sept. 29, 2004) (allowing the amendment of an affidavit of merit because the affidavit was equivocal as to whether the breach was a proximate cause of the decedent's injury); *Kalinowski v. Adams*, 2012 WL 1413999, at *1-*2 (Del. Super. Mar. 9, 2012) (allowing the plaintiff to amend the affidavit of merit because the original affidavit was unclear as to whether the defendants' actions had proximately caused the plaintiff's injuries).

[35] *See Truitt v. Bay Health Med. Ctr., Inc.*, 2019 WL 5460190, at *2 (Del. Super. Oct. 24, 2019) (Court assumed that failure to address the negligence of one of the defendants was an "oversight" and allowed amendment of the affidavit); *Buck*, 2015 WL 2400537, at *2 (where proffered affidavit did not address negligence of institutional defendant, Court permitted plaintiff to supplement record with affidavit addressing negligence of that defendant).

[36] *Buck*, 2015 WL 2400537, at *1 (alteration in original) (citing *Beckett*, 897 A.2d at 757–58 (Del. 2006)); *cf. Old Guard Ins. Co. v. Jimmy's Grille, Inc.*, 860 A.2d 811 (TABLE), 2004 WL 2154286, at *3 (Del. 2004) (according "liberal construction" to rule regarding vacation of default judgments "because of the underlying public policy that favors a trial on the merits").

. . . ."[37] To be sure, the original affidavit addresses only the surgical procedure as a proximate cause of Plaintiff's injuries, not any other aspects of treatment. However, the Court recognizes that the affiant is a medical expert, not a legal one, and therefore may not have been cognizant at the time he signed the original affidavit that there may be multiple proximate causes of an injury. [38] Accordingly, "[a]s generously as the Court can,"[39] the Court will assume that the failure of the attesting expert to address alleged misdiagnosis and post-operative consultation as potential additional proximate causes of Plaintiff's injuries was an oversight and will therefore allow Plaintiff to submit an amended affidavit of merit addressing whether other aspects of Plaintiff's treatment were also proximate causes of his injuries.

### D. The Amended Affidavit of Merit complies with the statute in part.

As noted *supra*, Plaintiff has filed an Amended Affidavit of Merit signed by the same expert who signed the original affidavit. Although the Amended Affidavit was submitted without leave of the Court, the Court will nonetheless consider it in the interests of judicial economy.

In accordance with the statute, the Court has conducted an *in camera* review of the Amended Affidavit. With respect to the statutorily required qualifications of the expert, the Amended Affidavit does not differ from the original, and the Court finds as follows with regard to those items:

    a. The current *curriculum vitae* of the expert is attached.

    b. The expert was licensed to practice medicine as of the date of the Amended Affidavit.

---

[37] 1986 WL 1270, at *1 (citations omitted).
[38] *Duphily v. Delaware Electric Cooperative, Inc.*, 662 A.2d 821, 829 (Del. 1995).
[39] *Truitt*, 2019 WL 5460190, at *2.

12

c. During the 3 years immediately preceding the alleged medical negligence, the expert was involved in treating patients in the same or similar field of medicine as Dr. Schulze.

d. The expert is Board certified in Orthopedic Surgery, the same or similar field as Dr. Schulze.

With respect to the statute's requirements regarding certification of breach and proximate cause, the Amended Affidavit states that Defendants' "continuing medical negligence" both during and after the surgery until December 28, 2018, the date of the last post-operative visit, was the proximate cause of Plaintiff's injuries and that Plaintiff's injuries were avoidable but for the surgical procedure and follow-up care. The Amended Affidavit separately states that "[a]s a result of Schulze's misdiagnosis, mistaken large incision, and negligent follow up [sic] care," Plaintiff suffered the injuries in this case. As with the Amended Complaint, the Amended Affidavit fails to clarify whether the term "misdiagnosis" refers to pre-surgery diagnosis, post-surgery diagnosis, or both. The Amended Affidavit also fails to state whether this "misdiagnosis" was a *proximate* cause of Plaintiff's injuries, and as noted *supra*, states that Defendants' negligence during and after the surgery – but not before the surgery – proximately caused Plaintiff's injuries.

In *Kalinowski, supra*, this Court rejected an affidavit of merit – while allowing a supplemental affidavit to be filed – because the original affidavit was unclear as to whether alleged negligent conduct was a proximate cause of the plaintiff's injury or was instead merely a factor in that injury.[40] As the Court explained,

> While the court will not turn the affidavit of merit procedure into a mini-summary judgment, the court will not parse [the affidavit] to glean [its] meaning. If the expert believes Defendants' negligence

---

[40] 2012 WL 1413999, at *1.

proximately caused Kalinowski's injuries, the affidavit should say so in simple, clear language.[41]

Similarly, if Plaintiff's expert believes that any misdiagnosis, whether pre-surgery or post-surgery, was a proximate cause of Plaintiff's injuries, he must say so in affidavit form.

Therefore, the Court finds that the Amended Affidavit satisfies the requirements of 18 *Del. C.* § 6853(a)(1) and (c) with respect to Plaintiff's allegations of continuing medical negligence relating to the October 3, 2018, surgery and the post-surgery follow-up care. The Court will permit Plaintiff to file a supplemental affidavit addressing any allegations of negligence relating to misdiagnosis, as explained below.

## CONCLUSION

For the foregoing reasons, Defendants' Renewed Motion to Dismiss is **DENIED in part and DEFERRED in part**, and Plaintiff's Amended Affidavit of Merit is **ACCEPTED in part and DEFERRED in part**. Within 21 days from the date of this Opinion and Order, Plaintiff may file a second amended complaint addressing whether any pre-surgery diagnosis or misdiagnosis was part of the alleged continuum of negligent medical treatment. Within that same 21-day period, Plaintiff may also submit a supplemental affidavit of merit clarifying whether any pre-surgery "misdiagnosis" was part of the continuing course of negligent medical treatment, and addressing whether any "misdiagnosis," either pre-surgery or post-surgery, was a proximate cause of Plaintiff's injuries. Following any such filings, or if no such submissions are filed then following the expiration of the 21-day period, the Court will issue a supplemental decision addressing these issues. Defendants

---

[41] *Id.*

14

will not be required to file a responsive pleading until the Court issues its supplemental decision.

**IT IS SO ORDERED.**

/s/Noel Eason Primos
Judge

NEP/wjs
*Via File & ServeXpress*
Oc:   Prothonotary
        Counsel of Record